IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KANT MUCHHALA, et al., | CASE NO. CV-F-**05-0863 LJO** |
| Plaintiffs, | **ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION** |
| vs. | |
| SPECTRUM ADMINISTRATION, et al., | |
| Defendants. | |

Pursuant to a notice filed on June 28, 2006, Defendant United States seeks an order granting summary judgment, or in the alternative, summary adjudication. Plaintiffs Kant and Carolyn Muchhala filed an opposition on July 13, 2006. Defendant filed a reply on July 27, 2006. The matter came on regularly for hearing on August 3, 2006 in Department 8 of the above-entitled court. Plaintiffs appeared by counsel Douglas Gordon. Defendant appeared by counsel Kristi Kapetan. Having considered the moving, opposition, and reply papers, as well as the arguments of counsel and the Court's file, the Court issues the following order.

**FACTUAL AND PROCEDURAL BACKGROUND**

On May 9, 2004 in Yosemite National Park, Plaintiffs' decedent, Jay David Muchhala, climbed a power pole and came into contact with 12,000-volt power lines, causing him to be electrocuted and to fall to his death. The park is owned and operated by defendant United States of America through the Department of the Interior.

The pole Muchhala climbed was about 30 feet tall and made of galvanized steel. It had two cross arms at the top and three conductor tables. There were no warning signs stating, "danger high voltage"

on the pole at the time of the incident. The climbing pegs on the pole began at approximately four feet off the ground. It is undisputed that the autopsy report shows that decedent died of electrocution, but his head injuries from the fall were also lethal. Decedent was found wearing climbing shoes, and some of his belongings were behind a boulder, which lead the Park Service to believe he was not following the established trail, but was likely climbing up a field of boulders, called a "talus" field.

Plaintiffs, Kant Muchhala and Carolyn Muchhala, parents of decedent, allege causes of action for dangerous condition of public property, and for wrongful death. Trial is set for September 18, 2006.

## ANALYSIS & DISCUSSION

Defendant United States moves for summary judgment against plaintiffs on the grounds that (1) Decedent Jay Muchhala assumed the risk of injury when he climbed the electric utility pole in Yosemite National Park; (2) the National Park Service was not negligent in failing to have signs or stickers posted on the subject pole on the date of the incident; (3) neither the height of the climbing pegs nor the lack of a warning caused Plaintiff's injury.

### Summary Judgment Standards

F.R.Civ.P. 56(b) permits a party against whom a claim is asserted to seek "summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(e); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh evidence or determine the truth of contested matters. F.R.Civ.P. 56( c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997)

The evidence of the party opposing summary judgment is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. To attempt to establish a factual dispute, the opposing party may not rely on mere allegations or denials of an adverse parties' pleadings and is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute

exists. F.R.Civ.P. 56(e); *Matsushita Elec.*, 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575 (1968); *Strong v. France*, 474 F.2d 747, 749 (9th Cir. 1973). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec.*, 475 U.S. at 587, 106 S.Ct. 1348 (citations omitted).

In addition, a party opposing summary judgment must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. "No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698 (1988).

The court, however, has no duty to search the record, *sua sponte*, for some genuine issue of material fact; the court may rely entirely on the evidence of the moving party. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 403 (6th Cir. 1992). If the motion is based on deposition testimony, the court may rely exclusively on portions highlighted by the moving party and need not comb the deposition to discover conflicting testimony. *Guarino v. Brookfield Township Trustees, supra*, 980 F.2d at 403. The court is not obligated to consider matters not specifically brought to its attention.

**Defense not Pled**

Normally, summary judgment cannot be granted on the basis of claims or defenses not plead. The Ninth Circuit has upheld refusal to consider unpled issues. In *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1291 (9th Cir. 2000), the plaintiff could not avoid summary judgment by asserting a theory not plead or made known to defendant during discovery because permitting unpled theory 'would prejudice the defendant'.

Courts, however, may treat a party's raising new claims or defenses on a summary judgment motion as a motion for leave to amend the pleadings, which is normally granted absent prejudice to the opposing party. In the absence of a showing of prejudice, an affirmative defense may be raised for the first time at summary judgment. *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir.1993). Indeed, in

3

*Coleman v. Quaker Oats Co.*, the Court considered the prejudice to the defendant from permitting an unpled theory to be considered.

Plaintiffs have not shown how they have been prejudiced from the lack of pleading the affirmative defense of primary assumption of the risk. Apparently, the assumption of the risk has been an issue fully developed in discovery, as evidenced by the questions at the depositions. In addition, it was raised in the Court's Scheduling Order. Therefore, the Court may consider the defense.

**Primary Assumption of the Risk**

Defendant argues that decedent assumed the risk of electrocution and thereby is barred from any recovery.

The doctrine of primary assumption of risk is a complete defense. "Where, by virtue of the nature of the activity and the parties' relationship to the activity, defendant owed no legal duty to protect plaintiff from the particular risk of harm that caused the injury (so-called 'primary assumption of the risk'), plaintiff is completely barred from recovery." *Knight v. Jewett*, 3 Cal.4th 296, 308-309, 11 Cal.Rptr.2d 2, 9-10 (1992).[1]

The parties dispute whether primary assumption of the risk applies at all. Plaintiffs argue that primary assumption of the risk is inapplicable. Plaintiffs argue Defendant cannot establish a key element of its affirmative defense, i.e., that Mr. Muchhala was climbing the pole for enjoyment or thrill, rather than simply to help find his way in the woods. Thus, plaintiffs argue that decedent's climbing the pole was not a sporting activity. On the other hand, defendant contends primary assumption of the risk applies because it applies to "activities" and not just sporting activities.

A key factor in determining whether the doctrine of primary assumption of the risk applies is the nature of the activity. The existence and scope of the applicable duty of care in a given case turns both on the nature of the activity involved and the role of defendant whose conduct is at issue. *Knight v. Jewett*, *supra*, 3 Cal.4th at 313. With respect to the nature of the activity, the doctrine of primary assumption of the risk applies "where 'conditions or conduct that otherwise might be viewed as

---

[1] *Knight v. Jewett*, 3 Cal.4th 296, 314-315 (1992) is the seminal California case on primary assumption of the risk. The case also addressed secondary assumption of the risk. "Secondary assumption of risk [is] where a defendant breaches a duty of care owed to the plaintiff but the plaintiff nevertheless knowingly encounters the risk created by the breach. Secondary assumption of risk is not a bar to recovery, but requires the application of comparative fault principles."

4

dangerous often are an integral part of the sport [or activity] itself.'" *Saville v.Sierra College*, 133 Cal.App.4th 857, 867, 36 Cal.Rptr.3d 515 (2005), quoting *Knight*, 3 Cal.4th at p. 315. "In these types of activities, the integral conditions of the sport or the inherent risks of careless conduct by others render the possibility of injury obvious, and negate the duty of care usually owed by the defendant for those particular risks of harm. A duty imposed in those situations would significantly change the very purpose or nature of the activity. *Saville*, 133 Cal.App.4th at 868.

While the cases contain language that primary assumption of the risk applies to "activities" as well as sports activities, most of the cases deal with sports related injuries. *Moser v. Ratinoff*, 105 Cal. App. 4th 1211, 130 Cal. Rptr. 2d 198 (2003) (long distance bicycle race); *Peart v. Ferro*, 13 Cal. Rptr. 3d 885 (2004) (minor operating a motor craft); *Calhoon v. Lewis* 81 Cal.App.4th 108, 115 (2000) (skateboarding);*Vine v. Bear Valley Ski Co.*, 118 Cal. App. 4th 577, 13 Cal. Rptr. 3d 370 (2004) (snowboarding); *Lackner v. North*, 37 Cal. Rptr. 3d 863 (2006) (skier struck by snowboarder); *Souza v. Squaw Valley Ski Corp.*, 138 Cal. App. 4th 262, 41 Cal. Rptr. 3d 389 (2006) (Child skier's collision with plainly visible aluminum snowmaking hydrant); *Kahn v. East Side Union High School Dist.*, 31 Cal.4th 990, 4 Cal. Rptr. 3d 103, 75 P.3d 30 (2003) (high school student injured at swim meet), and countless others.

In *Saville v. Sierra College*, 133 Cal.App.4th 857, 36 Cal.Rptr.3d 515 (2005) (Saville ), the court addressed the question of whether primary assumption of the risk exists outside of a sports-related activity. In *Saville,* a student was injured while practicing arrest and control techniques as part of a peace officer training course. The plaintiff argued that the takedown maneuver at issue was not an "activity or sport" to which the doctrine of primary assumption of the risk applied. In rejecting that argument, the court acknowledged that originally, the doctrine had limited application primary assumption of the risk "to sports activities. Since then, however, courts have extended the doctrine's reach." The *Saville* court concluded that " '[t]he full scope of the defense of primary assumption of risk has yet to be established.' Saville, at 524. *Saville* relied upon *Knight*, "The *Knight* court stated the doctrine applied to activities or sports. Nowhere did it limit the scope of activities subject to the defense only to sports.... Instead, it established the defense's governing principles of risk for application on a case-by-case basis." *Saville*, at 524. *See also*, *Rostai v. Neste Enterprises*, 138 Cal. App. 4th 326, 41 Cal.

Rptr. 3d 411 (2006) (Primary assumption of risk doctrine was a complete defense to action for damages based on alleged negligence of personal fitness trainer in failing to investigate cardiac risk factors of client as a result of which client allegedly suffered a heart attack during his first training workout; stress on the cardiovascular system as a result of physical exertion that is an integral part of fitness training with a personal trainer was a risk inherent in the activity.)  In *Duncan v. U.S.*, 2006 WL 1628883, *12 (E.D.Cal. 2006), Magistate Dennis Beck echoed *Saville* and held "Simply put, and contrary to plaintiff's view, primary assumption of the risk is not limited to sports but applies to any physical activity that involves an element of risk or danger as an integral part of the activity."  Thus, these cases hold that "primary assumption of the risk" applies to "activities."

Here, the undisputed facts are that decedent was at the Park for the purpose of hiking a trail and it is not disputed that he was hiking the talus field, which was not part of the regular hiking trail.  He initially was engaged in hiking.  He departed from the hike and climbed a utility pole.  The utility pole is not on the hiking trail.  Climbing a manmade pole is not an activity of general hiking.  Therefore, the activity to be analyzed is climbing the pole.

The doctrine of "presumption of the risk" thus defines a more limited scope of the <u>duty</u> to decedent.

**Duty and Foreseeability**

The alleged negligent conduct is the lack of warning sign and having the climbing pegs beginning at four feet, thereby making the pole an easy ladder to climb.

Under California law, a landowner in the management of his or her property has the duty to act reasonably in view of the probability of injury to others. *Rowland v. Christian*, 69 Cal.2d 108, 119, 70 Cal.Rptr. 97, 443 P.2d 561 (1968); *see also Henderson v. United States*, 827 F.2d 1233 (9th Cir.1987), *withdrawn and new opinion issued*, 846 F.2d 1233 (9th Cir.1988) (lack of foreseeability that vandals would climb power poles to cut and steal copper wires supported a finding of no negligence in failing to restrict access to power poles).  California law imposes a duty on a property owner to act as "a reasonable man in view of the probability of injuries to others," without giving determinative weight to the status of the injured party. *Rowland v. Christian*, 69 Cal.2d 108, 119, 70 Cal.Rptr. 97, 104 (1968) (en banc).

The existence and scope of defendant's duty of care under the circumstances is a legal (not a factual) issue, which depends on the nature of the activity in question and the parties' general relationship to the activity. Whether a duty exists in any particular fact setting is resolved by the court as a matter of law even though the duty determination inevitably rests on certain factual assumptions or findings about the particular activity or sport. *See Knight*, 3 Cal.4th at 305-06. It is an issue to be decided by the court, rather than the jury. *Knight*, 3 Cal.4th at 313.

Defendant argues no duty exists because it was not foreseeable that a person would climb a power pole while hiking. It is error for the court to find no duty based solely on the factor of foreseeability. *Henderson v. U.S.*, 846 F.2d at 1236. The Court must look as duty as follows: "[I]n light of the nature of the sporting activity in which defendant and plaintiff were engaged, [did] defendant's conduct breach a legal duty of care to plaintiff." *Knight*, 3 Cal.4th at 315.

Traditionally, California courts look to several factors to determine the existence of a duty:

> "the forseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved."
> *Preston v. Goldman*, 42 Cal.3d 108, 227 Cal.Rptr. 817, 822-23 (1986) (quoting *Rowland*, 69 Cal.2d at 112-13, 70 Cal.Rptr. at 100).

The Court in *Knight*, however, did not analyze "duty" with these factors. Rather, the *Knight* court focused its analysis of duty on the "inherent risks" of the sport at issue - touch football. *Knight,* 3 Cal. 4th at 315-316 ("In a sports setting, however, conditions or conduct that otherwise might be viewed as dangerous often are an integral part of the sport itself;" "[d]efendants generally have no legal duty to eliminate (or protect plaintiff against) risks inherent in the sport itself.") The duty under "primary presumption of the risk" is more limited than a duty imposed by the *Rowland* factors.

As stated, decedent veered off of the hiking path and was hiking a talus field. (Undisputed fact 6.) The pole was off the hiking path. The pole is 30 ft high and made of galvanized steel. (Undisputed fact 2.) At the top, the pole had cross arms with conductor cables extending therefrom. (*Id.*) The climbing pegs were set at four feet above the ground. Decedent climbed the power pole and was electrocuted. It is undisputed that the power pole had no warning sign of "high voltage."

1    Plaintiffs argue that if the primary assumption of the risks applies, then defendant remains liable
2 because defendant <u>increased</u> the risks.

3    Although defendants have no duty to eliminate or protect plaintiffs from risks inherent in certain
4 activities, they do have a duty to use due care not to increase the inherent risks or to engage in conduct
5 or risks outside the normal scope of those activities. *Knight v. Jewett*, 3 Cal.4th at 315-316.  For
6 instance, California Court have viewed that colliding with a snowboard that has escaped from its user
7 may be an inherent risk of snowboarding or skiing. However, it is a triable issue of fact whether use of
8 a snowboard without retention straps (that tether the board to the user's leg), in violation of posted safety
9 regulations and a local ordinance, increased the risk of harm beyond what was inherent in the sport.
10 *Campbell v. Derylo,* 75 Cal.App.4th 823, 828-829, 89 Cal.Rptr.2d 519, 523-524 (1999).

11    Defendant argues that the accident was unforeseeable, relying upon *Perrine v Pacific Gas &*
12 *Electric Co.*, 186 Cal App 2d 442, 9 Cal Rptr 45  (1960).  In *Perrine*, the court held that a power
13 company was not liable for injuries sustained by a construction worker when a steel reinforcing rod he
14 was handling came in contact with the company's electric line, when the wires were plainly visible, at
15 the legally prescribed distance from the building, marked with warning signs which were visible though
16 not seen.  The Court stated that even "one who maintains so dangerous an instrumentality as a
17 high-power line need not anticipate at his peril every possible fortuitous circumstance under which
18 someone may make contact with the wires causing injury, since care commensurate with and
19 proportionate to reasonably foreseeable consequences, not insurance against every possible accident, was
20 the measure of liability."

21    In *Perrine*, the power lines were clearly marked as high voltage.   Here, it is undisputed that the
22 pole did not have any warning sign.

23    The parties dispute whether it was possible to mistake the pole for anything other than a utility
24 pole.  Plaintiffs argue that this raises an issue of fact. Defendant states it was impossible to mistake it
25 for anything other than a power pole, as evidence by the wires and lines attached to it.  (Undisputed Fact
26 no.8.) Defendant argues that the pole was so obviously a utility pole and that everyone knows not to go
27 near power poles of any kind.  Plaintiff, however, states the pole is virtually indistinguishable from a
28 telephone pole which poses no shock hazard, citing defendant's expert Mark Rhodes (Exh. F.)

The "obvious" nature of the power pole is disputed by competent evidence. The Court cannot conclude as a matter of law whether the absence of the warning sign increased the risk of harm. Whether a warning sign would have alerted decedent to the "obvious" nature of the power pole is subject to determination by the trier of fact. A trier of fact could find that, by failing to warn of high voltage, defendant unnecessarily increased the danger that decedent was climbing a high voltage power pole rather than another kind of utility pole. Accordingly, summary judgment is inappropriate.

**GO 95 and Negligence per se**

Plaintiffs contend that the government's alleged regulatory violations increased the risks to decedent by failing to warn of the high voltage hazard and by permitting easy access to the power pole. Plaintiffs argue that the defendant violated California Public Utilities Commission safety regulations, General Order 95 ("GO 95") and increased the risks to decedent.

Under the statutory provision for presumed negligence, any applicable statute, ordinance, or regulation defines the extent of the defendant's duty. See Cal.Evid.Code § 669.[2] The doctrine of negligence per se may be asserted only if the statute allegedly violated was applicable to the government at the time of the alleged negligence. *Henderson v. United States*, 827 F.2d at 1237-38.

In *Henderson*, a trespasser on federal land suffered severe injury from contact with a high voltage power line at an unused missile test facility. Plaintiff argued that the United States was presumed negligent under Cal.Evid.Code § 669(a), because it violated California Public Utility Commission ("PUC") General Order No. 95, setting forth safety standards for the design and construction of high voltage power lines. *Henderson*, 827 F.2d at 1238, concluded that GO 95 was not applicable to non-public utilities, such as the United States. The Court noted that GO 95 only applied to electrical supply and communication lines that come within the jurisdiction of the PUC. The Court then reviewed

---

[2] Cal.Evid.Code § 669(a) provides:
  The failure of a person to exercise due care is presumed if:
  (1) He violated a statute, ordinance, or regulation of a public entity;
  (2) The violation proximately caused death or injury to person or property;
  (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and
  (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.

9

the statutes which define a "public utility" and concluded that the United States in that case clearly was not a utility. *Id* at 1237. "We therefore conclude that GO 95 is not applicable to non-utilities such as the United States in this case. Accordingly, Henderson's claim of presumed negligence cannot be founded on an alleged violation of GO 95." *Henderson*, 827 F.2d at 1238.

At oral argument, plaintiffs argued that GO 95 was applicable to establish negligence per se because the United States "functioned as a utility," citing to deposition testimony of Paul Laymon an Kent Summers. At oral argument, defendant's objection of lack of foundation to Mr. Laymon's testimony was addressed. The evidence submitted to the Court did not support the foundational aspects of plaintiffs' argument that Mr. Laymon could competently testify that the United States was a utility. At oral argument, plaintiffs counsel indicated that additional testimony of Mr. Laymon competently supported plaintiff's claim that the United States was a utility, but counsel had not submitted the full transcript for the Court's consideration.

Following the hearing, the Court reviewed the deposition transcript of Mr. Laymon. Mr. Laymon testifies that he is a "facility manager for utilities" in Yosemite in which he is the manager for "water, waster water and electric operations" in the park. (Layman Dep. P.8; 9.) Mr. Laymon's role in management is not the day to day operations; he manages the overall budget, sets priorities, determines funding requirements, puts together packages to request for funding and ensure they have qualified personnel. (Laymon Dep. P.14-15.)

Giving all reasonable inference to this testimony for purposes of this motion, the testimony establishes the foundation that Mr. Laymon background and his role in the provision of electrical power in Yosemite. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986) (all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party.)

Mr. Laymon testified that one of the functions of electric operations, which he calls the "high voltage electric operations shop," is as follows:

> A: That shop functions as an electric utility company. Our responsibility is electric distribution primarily up to the meter of the customer.

10

1     Q:    And so that shop is responsible for maintenance and repair of all
2           of those — all of that system, that distribution system. Is that
3           accurate?
4     A:    Correct.
5     Q:    And is that shop responsible for maintaining that electrical
6           distribution system in a safe condition.?
7     A:    Within the resources that the park service gives them, yes.
8           (Laymon Dep. P.10:24-11:10.)

In *Henderson*, the court noted the California Public Utilities Code defines a "public utility," *inter alia*, as an electrical corporation that owns, controls, or operates fixtures for the transmission of power, <u>for compensation</u>, to the public or any portion thereof. Cal.Pub. Util. Code §§ 216(a), (b), 217, 218(a). An "Electrical corporation" includes every corporation or person owning, controlling, operating, or managing any electric plant for compensation within this state, except where electricity is generated on or distributed by the producer through private property <u>solely for its own use or the use of its tenants and not for sale or transmission to others</u>. Cal. Pub. Util.Code § 217 (emphasis added).

      There is no competent evidence that the Park is a "utility" as legally defined, as opposed merely to functioning as one. For instance, plaintiffs argue that the concessionaire is the "customer," although there is no evidence to so establish this fact or that the Park is compensated for any electricity provided. Moreover, plaintiffs argues the concessionaire is the customer, and possibly a tenant, which would exempt the Park from being an "electrical corporation." In any event, Mr. Laymon's legal conclusion, that the shop operates like a utility company, does not raise an issue of fact absent the necessary foundational facts. Accordingly, plaintiffs have not raised an triable issue of fact.

/////
/////
/////
/////
/////
/////

# CONCLUSION

For all the foregoing reasons, the Court partially GRANTS and partially DENIES defendants' motion for summary judgment or in the alternative for summary adjudication:

1. The Court GRANTS the motion for summary of adjudication on the claim of Negligence per Se.
2. The Court DENIES the remainder of the motion.

**IT IS SO ORDERED.**

**Dated:    August 3, 2006**                              /s/ Lawrence J. O'Neill
**b9ed48**                                                 **UNITED STATES MAGISTRATE JUDGE**